```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION
```

**FREDERICK R. HUFFMAN, JR.**

        Plaintiff,

   vs.                                Civil Action 2:10-CV-031
                                          Judge Frost
                                          Magistrate Judge King

**MICHAEL J. ASTRUE, Commissioner**
**of Social Security,**

        Defendant.


## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) and 1383(c), for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income.  This matter is now before the Court on plaintiff's *Statement of Specific Errors* and the Commissioner's *Memorandum in Opposition*.

**Procedural History**

Plaintiff, Frederick R. Huffman, Jr., filed his application for benefits in October 2006, alleging that he has been disabled since March 1, 2001.[1]  He alleges that he is disabled by reason of back problems, schizophrenia, diabetes, high blood pressure and high cholesterol.  *A.R.* 150.  The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

On April 14, 2009, plaintiff, represented by counsel, appeared

---

[1] Plaintiff filed a prior application for benefits in March 2004. That application was denied following an administrative hearing and a decision dated September 11, 2006. *A.R.* 52-68. Plaintiff did not, apparently, seek further review of that decision.

and testified at a video hearing. Also testifying at the administrative hearing was Patricia B. Posey, who testified as a vocational expert. In a decision dated May 18, 2009, the administrative law judge denied benefits.

That decision became the final decision of the Commissioner when the Appeals Council denied review on November 10, 2009.

**Standard**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595

(6th Cir. 2005).

Plaintiff does not challenge the administrative law judge's evaluation of the medical evidence. *Statement of Specific Errors*, pp. 3-5. Rather, plaintiff contends that the administrative law judge did not accurately describe his limitations to the vocational expert and therefore should not have relied on that expert's testimony concerning jobs that plaintiff could perform.

**Evidence**

Plaintiff was 46 years old at the time the administrative law judge issued his decision. *A.R.* 22, 121. He has a high school education. *A.R.* 157. He has prior relevant work experience as a dishwasher, factory worker and janitor. *A.R.* 151. Plaintiff has not engaged in substantial gainful activity since October 3, 2006. *A.R.* 13.

By way of medical background, plaintiff was hospitalized on January 15, 2001, after becoming suspicious and paranoid, and was discharged on January 25, 2001, with a diagnosis of schizoaffective disorder. *A.R.* 194-196. In June 2004, an x-ray of plaintiff's spine revealed degenerative disc disease. *A.R.* 197. In 2004, plaintiff was also diagnosed with diabetes. *A.R.* 210. In connection with his application for supplemental social security income, plaintiff reported that he is 6' 1" tall and weighs 379 pounds. *A.R.* 149.

Sivaram Kollengode, M.D., a treating family physician, regularly examined plaintiff. *A.R.* 153, 263-277. On several occasions in 2006 and at least once in early 2007, Dr. Kollengode reported that plaintiff's back was straight, he had full range of motion and no CVA tenderness. *A.R.* 267, 172-273, 275-277. Dr. Kollengode also noted

that, based on plaintiff's weight and body mass index ("BMI"), plaintiff is morbidly obese.  *A.R.* 266-277, 308-309, 314-315.

Stewart W. Fern, M.D., a treating psychiatrist, regularly supervised plaintiff's medication for schizophrenia.  *A.R.* 214, 252.  On September 26, 2006, Dr. Fern noted that plaintiff was acceptably groomed, alert and oriented and that his speech and thought were coherent and organized.  *A.R.* 252.  Dr. Fern further reported that, although plaintiff suffered from social anxiety, he exhibited no psychotic symptoms.  *Id*.  There were no observed or reported side effects from plaintiff's medications and Dr. Fern did not suggest any medication changes.  *Id*.  Dr. Fern opined that plaintiff is unable to work.  *Id*.

In October 2006, John J. Antalis, M.D., to whom plaintiff had been referred by Dr. Kollengode, found no diabetic retinopathy.  *A.R.* 201-202.

In December 2006, plaintiff reported that his daily activities included washing dishes, keeping his house clean, vacuuming and caring for two birds.  *A.R.* 159.  Plaintiff also reported that he occasionally uses a microwave, likes to assemble small wood planes and plays computer games all day.  *Id*.  Plaintiff is able to drive short distances and leaves the house only to go to the grocery store or to the doctor's office.  *Id*.  Plaintiff further reported that he cannot be left alone with his son, who is disabled, because of plaintiff's schizophrenia.  *Id*.

On January 3, 2007, Clark J. Leslie, M.D., performed a consultative evaluation at the request of Dr. Kollengode.  *A.R.* 213.  Dr. Leslie's examination revealed that plaintiff is morbidly obese,

but was alert and oriented and in no acute distress.  *Id.*  Dr. Leslie discussed bariatric surgery with plaintiff, who expressed some interest in that procedure.  *Id*.

On January 8, 2007, Mark W. Weaver, M.D., performed a disability evaluation of plaintiff at the request of the state agency.  *A.R.* 214-218.  Plaintiff was alert and oriented and able to follow directions, but had a blunted affect and depressed mood throughout the exam; he avoided direct eye contract.  *A.R.* 217.  Plaintiff reported that his medications controlled his schizophrenia, but that he still becomes panicky, anxious and paranoid in crowds and public places.  *A.R.* 214.  Plaintiff further reported that he experiences constant back pain and stiffness, which limits his ability to stand and walk to ten minutes at a time and his ability to lift and carry to approximately ten pounds occasionally.  *Id*.  Plaintiff did not use a cane, crutches, a walker, a wheelchair, splints, braces or a transcutaneous neural stimulation unit.[2]  *Id*.  On examination, plaintiff walked with a stiff, symmetric, wide-based gait and did not become short of breath walking the hallway or performing physical activities during the exam.  *A.R.* 215.  Motion in the upper and lower extremities was satisfactory and symmetric.  *A.R.* 216-217.  Plaintiff's spine showed a normal curve without atrophy or scoliosis.  *A.R.* 217.  Examination revealed mild spasm and tenderness in some back muscles and joints, but none in the neck or middle back areas.  *Id*.  Dr. Weaver concluded that plaintiff would be limited in his ability to perform sustained standing, walking

---

[2] A transcutaneous neural stimulation unit ("TNS unit") is a device that emits vibrations to minimize back pain.  *Williams v. Astrue*, No. 08-13470, 2009 U.S. Dist. LEXIS 79145, at *4 (E.D. Mich. July 28, 2009); *Jones v. Heckler*, 583 F. Supp. 1250, 1253 (N.D. Ill. 1984).

and repetitive or heavy lifting and carrying.  *A.R.* 218.  Plaintiff would be able to perform physical activities involving sitting, occasional light lifting and carrying, handling objects, hearing, speaking and following directions and travel.  *Id*.

On January 12, 2007, Guy Melvin, Ph.D., a state agency psychologist, reviewed the record and assessed plaintiff's residual functional capacity ("RFC") from September 11, 2006 through January 10, 2007.  *A.R.* 223.  According to Dr. Melvin, plaintiff suffers from major depression, borderline intellectual functioning, generalized anxiety disorder and personality disorder not otherwise specified.  *A.R.* 226-228, 230.  However, Dr. Melvin concluded that plaintiff had no restriction of activities of daily living and no episodes of decompensation.  *A.R.* 233.  Plaintiff has moderate difficulty in maintaining social functioning and in maintaining concentration, persistence or pace.  *Id*.

On February 6, 2007, Dr. Fern saw plaintiff for medication supervision.  *A.R.* 251.  Plaintiff was acceptably groomed, alert and oriented and his speech and thought were coherent and organized.  *Id*.  Plaintiff's mood was depressed and his affect was restricted, but he had no suicidal ideation or psychotic symptoms.  *Id*.  After noting that plaintiff had difficulty being around people, Dr. Fern reported that plaintiff's condition "is complicated by occupational problems and economic problems.  He's disabled and unable to work due to his chronic severe back pain, medical problems, depression and social anxiety."  *Id*.  Dr. Fern noted further that "[i]t is unlikely anyone would hire him given his medical and psychiatric problems. [Plaintiff] [r]eports that he was turned down again for disability and

has an appeal pending." *Id*.

On October 23, 2007, Dr. Fern reported that plaintiff, who was walking with a cane, was alert and oriented and his speech and thought were coherent and well-organized. *A.R. 97*. Examination revealed no suicidal ideation or psychotic symptoms, although plaintiff still suffered from social anxiety. *Id*. Dr. Fern reported that plaintiff also struggled with "chronic back pain" and that he "has difficulty being around people and is unable to work." *Id*. Dr. Fern did not recommend a change in plaintiff's medications. *Id*.

On November 2, 2007, plaintiff underwent an examination by James D. Chlovechok, M.D., upon referral from Dr. Kollengode. *A.R. 278-280*. Plaintiff complained of low back pain; he walked with a cane. *A.R. 279*. Plaintiff reported that he plays video games and works with models. He has a child who suffers from cerebral palsy, a condition that requires plaintiff to do a lot of lifting. *Id*. Lumbar examination revealed no deformity, swelling or ecchymosis.[3] *Id*. Straight leg raising was negative; there was no atrophy. *Id*. Plaintiff's MRI showed some diffuse disc degeneration without major central or neural foraminal compromise. *A.R. 278*. There was mild bilateral neural foraminal stenosis at L5-S1 and mild facet arthropathy at L4-5. *Id*. Dr. Chlovechok diagnosed chronic low back pain and recommended that plaintiff try to maintain activities, avoid invasive interventions and try to lose weight. *Id*. Although

---

[3] "Ecchymosis is 'the escape of blood into the tissues from ruptured blood vessels marked by a livid black-and-blue or purple spot or area.'" *Solovy v. Morabito*, No. 09-1555, 375 Fed. Appx. 521, at *524 n.1 (6th Cir. April 27, 2010) (quoting *Webster's Third New International Dictionary* 718 (1986)).

plaintiff asked about his chances for obtaining supplemental security income, Dr. Chlovechok declined to comment on that issue. *Id*.

Dr. Kollengode examined plaintiff on several occasions between January 2008 and January 2009. *A.R.* 308-321. During these visits, plaintiff was alert and oriented and his affect was normal. *A.R.* 309, 311, 313, 315, 317, 319, 321. Examinations revealed no signs of distress. *A.R.* 308, 311, 312, 314, 316, 318, 320. During most of these visits, plaintiff reported that his general health was fair. *A.R.* 310, 312, 314, 316, 318, 320.

Dr. Fern saw plaintiff for medication supervision in March, July and November 2008. *A.R.* 294-296. During each visit, Dr. Fern noted that plaintiff was alert and oriented and had no suicidal ideation. *Id*. In November 2008, Dr. Fern noted that plaintiff tolerated his medication well. *A.R.* 295. There were no suggested changes to plaintiff's medications. *A.R.* 294-296. Dr. Fern commented during each of these visits that plaintiff is unable to work. *Id*.

At the administrative hearing, plaintiff testified that his daily activities included helping with the dishes, watching television and entertaining his young, disabled son. *A.R.* 30-31. He also worked with model wooden airplanes. *A.R.* 34. He has a current driver's license. *A.R.* 32. Plaintiff testified that he can lift no more than five pounds. *A.R.* 33. He cannot crouch, stoop or kneel; his wife must help him put on his socks. *A.R.* 33-34. He can climb, but he cannot crawl. *A.R.* 33.

Vocational expert Patricia B. Posey characterized plaintiff's past employment as a factory worker as requiring light exertion at the unskilled level, and his past employment as a janitor as requiring

medium exertion at the unskilled level.  *A.R.* 46.  The administrative law judge asked the vocational expert to assume a claimant  with plaintiff's vocational profile and a residual functional capacity to lift and carry twenty-five pounds frequently and fifty pounds occasionally.  *A.R.* 46.  The claimant could occasionally climb ramps and stairs, stoop, kneel and crouch, but could never climb ladders, ropes or scaffolds or crawl.  *A.R.* 46-47.  The claimant must avoid all exposure to hazards such as moving machinery and unsecured heights.  *A.R.* 47.  The claimant could perform simple, routine, repetitive tasks in a low stress work environment, *i.e.,* free of fast-paced production or quota requirements and involving only simple, work-related decisions, with few, if any, workplace changes.  *Id*.  The individual could occasionally have contact with coworkers and supervisors, but could never have contact with the public.  *Id*.

According to the vocational expert, such a claimant could perform such medium level jobs as machine or conveyor feeder.  *A.R.* 47-48.  Moreover, and based on plaintiff's description of his duties as a factory worker, the claimant could also perform that work at the medium level.  *A.R.* 48.

The vocational expert also testified that medium work generally does not accommodate a sit/stand option.  *A.R.* 49.

Asked to assume a claimant limited to light exertion, the vocational expert testified that such a claimant could perform approximately 53,000 jobs nationally as an assembler of printer products, approximately 14,000 jobs nationally as an order caller, and approximately 60,000 jobs nationally as a bakery conveyor line

inspector. *A.R.* 50.

Assuming that the claimant could not, because of "a combination of severe physical and mental impairments and associated pain and symptoms, . . . sustain sufficient concentration, persistence or pace to do even simple, routine tasks on a regular and continuing basis during an eight hour day, five days a week, or a 40-hour work week or equivalent work schedule," *id.*, the vocational expert testified that there would be no jobs available to such a claimant. *Id.*

**Administrative Decision**

The administrative law judge found that plaintiff's severe impairments include degenerative disc disease, morbid obesity, diabetes mellitus II, borderline intellectual functioning, major depression, generalized anxiety disorder, and personality disorder, NOS. *A.R.* 13. Whether considered singly or in combination, however, these impairments neither meet nor equal a listed impairment. The administrative law judge found that plaintiff has the residual functional capacity to perform a limited range of light work with the following restrictions: Plaintiff must be allowed to sit or stand alternately, at will, provided he is not off task more than 10% of the work period; he may occasionally stoop, kneel, crouch, and climb ramps and stairs; and he may never crawl or climb ladders, ropes, and scaffolds. *A.R.* 16. Plaintiff must avoid all exposure to hazards such as moving machinery and unsecured heights. *Id*. He is able to perform simple, routine, repetitive tasks in a low stress work environment defined as one free of fast-paced production or quota requirements and involving only simple, work-related decisions, with few, if any work place changes. *Id*. Plaintiff may have occasional

contact with co-workers and supervisors, but may never have contact with the public. *Id*. The administrative law judge found that these limitations preclude plaintiff's performance of his past work. *A.R.* 21. Based on the testimony of the vocational expert, the administrative law judge found that plaintiff could nevertheless perform a significant number of light jobs in the national economy, including such jobs as assembler of print products, order caller and bakery worker. *A.R.* 21-22. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *A.R.* 22.

**Discussion**

Plaintiff challenges the administrative law judge's assessment of plaintiff's residual functional capacity. More specifically, plaintiff argues that the administrative law judge improperly failed to recognize greater limitations in plaintiff's ability to sustain sufficient concentration, persistence or pace to perform even simple routine tasks. *Statement of Specific Errors*, Doc. No. 7. Plaintiff also contends that he cannot lift 25 pounds and that his medications cause drowsiness that would interfere with his ability to work. *Id*. Plaintiff further argues that, had the administrative law judge posed to the vocational expert a hypothetical question that accurately reflected plaintiff's true limitations, the administrative law judge would have found that there are no jobs available to plaintiff. *Id*.

In making his first argument, plaintiff relies on the opinions of disability articulated by his treating psychiatrist, Dr. Fern. The opinions of treating providers must be accorded controlling weight if they are "well-supported by medically acceptable clinical and

11

laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 423.927(d)(2). However, a treating provider's opinion of disability, a conclusion reserved to the Commissioner, is not controlling on the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006)(*en banc*); 20 C.F.R. §§ 423.927 (e) (2); 423.946 (residual functional capacity determination is expressly reserved to the Commissioner). Thus, Dr. Fern's repeated opinions of disability, *see A.R.* 251-252, 294-297, are not controlling. *See Combs*, 459 F.3d at 652. Moreover, the administrative law judge reasonably found that Dr. Fern's opinions were based solely on plaintiff's subjective complaints and were therefore neither controlling nor persuasive. *A.R.* 20.

Second, plaintiff argues that he "is unable to function on a daily basis because of drug induced sleep as a result of his medications taken for depression." *Statement of Specific Errors*, p. 4 (citing *A.R.* 30). As an initial matter, this argument overstates plaintiff's testimony during the administrative hearing:

> Q: Tell me about your [plaintiff's] depression. What does it prevent you from doing?
>
> A: Most of it's because of my back. The medication I have to take, it pretty much calms me down and makes me want to sleep.

*A.R.* 30. In addition, plaintiff advised his treating physicians that he was satisfied with his medications; he reported no adverse side effects except for minor issues on one occasion. *A.R.* 20, 288, 308, 310, 312, 314, 316, 318, 320. Moreover, Dr. Fern, who supervised plaintiff's medication, commented that there were no observed or

12

reported side effects from plaintiff's medications, and that plaintiff was tolerating his medication well.  *A.R.* 251-52, 294-97.  The administrative law judge did not err in this regard.

Plaintiff also contends that he cannot lift 25 pounds.  However, as the Commissioner notes, the administrative law judge did not find that plaintiff could lift 25 pounds.  Rather, the administrative law judge determined that plaintiff could perform a range of light work, which requires lifting no more than 20 pounds.  *A.R.* 16, 21.  This determination is supported by substantial evidence in the record.  For instance, Dr. Weaver, the consultative examiner whose opinion as to plaintiff's residual functional capacity was accepted by the administrative law judge, opined that plaintiff could perform, *inter alia*, occasional light lifting and carrying.  *A.R.* 218.  There is substantial support in the record for the administrative law judge's residual functional capacity findings.

The testimony of the vocational expert, contrary to plaintiff's assertions, further supports a finding that plaintiff is not disabled.  When asked to assume the residual functional capacity found by the administrative law judge, the vocational expert testified that the claimant could perform a significant number of jobs nationally, including such jobs as assembler of print products, order caller and bakery worker.  *A.R.* 49-50.

Plaintiff argues, however, that the vocational expert also testified that there were no jobs available to a claimant who, like plaintiff, "cannot sustain sufficient concentration, persistence or pace to do even simple, routine tasks on a regular and continuing basis during an eight hour day, five days a week, or a 40-hour work

13

week or equivalent work schedule." *A.R.* 50. However, because the residual functional capacity assessment of the administrative law judge is supported by substantial evidence and reasonably accommodated all of plaintiff's limitations as found by the administrative law judge, the administrative law judge did not err in relying on the vocational testimony based on that assessment. *See Varley v. Sec'y of Health and Human Servs.*, 880 F.2d 777, 779 (6th Cir. 1987).

In short, the Court concludes that the decision of the administrative law judge enjoys substantial support in the record and must therefore be affirmed by this Court.

It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen(14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers,* 18 *Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United*

*States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

                                               *s/Norah McCann King*
                                                 Norah M$^c$Cann King
                                 United States Magistrate Judge

January 24, 2011